IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| YVONNE DUNBAR, | ) | |
| | ) | |
| *Plaintiff*, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| RH & A LLC D/B/A RELIABLE | ) | |
| HEATING & AIR ("RH&A" OR | ) | |
| "COMPANY") AND RELIANCE HOME | ) | |
| COMFORT ("RELIANCE") | ) | JURY TRIAL DEMANDED |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff Yvonne Dunbar ("Ms. Dunbar" or "Plaintiff") sets forth this Complaint for Damages against corporate Defendants (1) RH & A LLC D/B/A Reliable Heating & Air ("RH&A" OR "COMPANY") and (2) Reliance Home Comfort ("Reliance" or collectively "Defendants") and respectfully shows the Court as follows:

## INTRODUCTION

1. This action is for illegal race-based discrimination and retaliation arising under 42 U.S.C. § 1981 ("Section 1981"). Plaintiff seeks declaratory and injunctive relief, back pay, front pay, liquidated damages, a permanent injunction against future violations, reinstatement or front pay in lieu of reinstatement,

1

compensatory damages, punitive damages, nominal damages, all attorney's fees and costs, and any other damages allowed by law or equity.

## JURISDICTION AND VENUE

2.	Plaintiff's claims under Section 1981 present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3.	Venue is proper pursuant to, *inter alia*, 28 U.S.C. § 1391(b)(2) because the unlawful employment practices alleged below were committed within the geographic boundaries of the Northern District of the United States District Court, Atlanta Division, and within the state of Georgia.

4.	This Court has personal jurisdiction over Defendants as they are either located within the geographic boundaries of this Court, and/or they conduct business within the geographic boundaries of this Court.

## PARTIES

5.	Plaintiff is a citizen of the United States and a resident of the State of Georgia.  Plaintiff was an employee of Defendants at all times material to this Complaint, concluding with her unlawful termination.

6.	Defendant RH&A is a company registered to conduct business and transacting business in the state of Georgia.

7. Defendant RH&A may be served with process through its registered agent if formal service of process is not waived.

8. Defendant Reliance is the parent company of Defendant RH&A in Canada.

9. Defendant Reliance may be served with process through its registered agent if formal service of process is not waived.

10. RH&A provides HVAC, plumbing, and electrical services to customers throughout Georgia.

11. RH&A is wholly owned by Reliance.

12. At all times material to this Complaint, Defendants were joint employers. In effect they each had control over Plaintiff's employment and the terms and conditions of her job.

13. Upon information and belief, each Defendant had authority to exercise control over the terms and conditions of Plaintiff's employment, specifically but not limited to her job assignments, her hours, her pay, her benefits, her promotional opportunities, and each had the ability to hire and fire her.

14. Defendants are each subject to the anti-discrimination provisions of Section 1981.

## FACTS

15. Plaintiff's race is African American.

16. On or around November 5 2019, Plaintiff joined RH&A as the Director of Finance/CFO.

17. When Plaintiff was hired, she was told that she would report to Ms. Demi Tsioros, global CFO of Reliance, and to Mr. Dan Jape Jr., President of RH&A (white male).

18. Throughout her employment however it became more and more clear that Dan Jape Jr. and/or his family really controlled all operations at RH&A and that they were prejudice against African American employees and customers.

19. During her employment Plaintiff had African American employees approach her warning her of the racial prejudices of the Jape family, and how they have been mistreated.

20. Further, Plaintiff witnessed disparate treatment between the treatment of similarly situated African American employees and their white colleges as well as African American customers and RH&A's white customers.

21. Plaintiff discussed these disparities in treatment with Dan Jape Jr., but nothing changed.

22. Further, Plaintiff was hired by Reliance to implement certain accounting reforms at RH&A.

23. When Plaintiff investigated she began to see a disturbing pattern where generally, if not exclusively, white employees were allowed things like "payday loans", or other accounting irregularities that African American employees were not allowed.

24. However, in the process of trying to investigate some of these problems, Plaintiff met stiff resistance due to her race.

25. For example, Plaintiff decided to fire a white female named Tina Prater.

26. Ms. Prater's husband Mike Prater is a salesperson, and member of the Jape family.

27. Plaintiff overheard Mike Prater call Dan Jape Jr. and say "I hear that black CFO of yours is firing white people." (Mike's sister is married to Dan Jape Sr.)

28. Dan Jape Sr. came to Plaintiff's office, his old office, over the weekend of January 26, 2020 and trashed her office.

29. Dan Jape Sr. was heard saying: "[t]his nigger can't have my painting hanging in her office."

30. When Plaintiff saw the destruction in her office, she informed Ms. Demi Tsioros, global CFO of Reliance what had happened, and what Dan Jape Sr. allegedly said.

31. Plaintiff further told Ms. Tsioros that she did not feel safe.

32. Ms. Tsioros told Plaintiff that Dan Jape Sr. could not be fired due to Reliable's purchase agreement for RH&A, and that Plaintiff would have to work around him.

33. After this incident, a white male named, Gary Roberts and other members of the Jape/Prater family began to increase their harassment of the Plaintiff.

34. For example, Plaintiff was called the "n" word, the "b" word, and the "c" word repeatedly.

35. Plaintiff complained to Dan Jape Jr. multiple times about the racial harassment she was experiencing.

36. Plaintiff further complained that employees and that customers were experiencing racial discrimination, but no action was taken.

37. Plaintiff told Dan Jape Jr. that she wanted to fire Gary Roberts.

38. Dan Jape Jr. told Plaintiff that Gary Roberts is his father's friend and that he is untouchable.

39. As time went on Plaintiff made it known that she would not continue to tolerate racial discrimination at RH&A, and that Dan Jape Jr. had to either fire her or the harassers.

40. Plaintiff was released from the company without any prior verbal or written warnings or made aware of any performance issues at any time.

41. Plaintiff's termination closely followed a heated discussion with Dan Jape Jr. about what amounted to the misuse of company funds by white employees.

42. On April 22, 2020, Plaintiff was terminated.

43. Plaintiff was terminated due to her race, and due to her complaints of race discrimination.

44. Defendants' decision to terminate Plaintiff was out of step with the way non-African American employees are treated for similar alleged offenses.

## COUNT I DISCRIMINATION IN VIOLATION OF SECTION 1981

45. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46. Plaintiff is a member of a protected class (African American).

47. Plaintiff was employed by Defendants at all times material to this Complaint, Plaintiff and Defendants were parties to an employment agreement under which Plaintiff provided services to Defendants and Defendants were required, among other things, compensate her for her services.

48. Plaintiff was qualified for the position she held.

49. Plaintiff was subjected to race discrimination based on the color of her skin and was subjected to disparate treatment by Defendants in the terms and conditions of her employment as described above.

50. This disparate treatment was because of Plaintiff's race and in violation of Section 1981.

51. Defendants willfully and wantonly disregarded Plaintiff's rights and Defendants' discrimination against Plaintiff was undertaken in bad faith.

52. Defendants failed to take prompt and appropriate remedial measures to stop or cure the aforementioned discrimination.

53. As a direct and proximate result of Defendants' unlawful discriminatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

## COUNTS II RETALIATION IN VIOLATION OF SECTION 1981

54. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

55. Plaintiff engaged in activities protected under Section 1981 by making multiple complaints of race-based discrimination.

56. After Plaintiff's complaints of discrimination, Plaintiff suffered adverse employment actions including, but not limited to, her termination.

57. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

**WHEREFORE**, Plaintiff demands a trial by jury and for the following relief:

(a) That Summons issue;

(b) That Defendants be served with the Summons and Complaint;

(c) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for the unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Reinstatement to Plaintiff's former position with Defendants, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and/or pensions;

(e) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for their conduct toward Plaintiff and deter Defendants from similar conduct in the future;

(g) Nominal damages;

(h) Reasonable attorney's fees and costs;

(i) Judgment against Defendants for damages incurred by Plaintiff;

(j) Judgment against Defendants in such an amount as will fully and adequately compensate Plaintiff; and

(k) Other and further relief as the Court deems just and proper.

Respectfully submitted, this 11th day of August 2020.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorney for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard, Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039